AUGUST ECKMAN v. CHARLES LAUER and Others.[1]

87 221
71 51

January 18, 1897.

Nos. 10,296—(212).

**Verdict—Evidence.**

*Held*, that on the facts, as shown upon the trial of this action, the verdict was supported by the evidence.

**Appealable Order.**

Quære: Whether an order denying a motion for judgment notwithstanding a verdict is appealable.

Appeal by defendants Lauer Bros. from an order of the district court for Ramsey county, Otis, J., denying a motion for judgment notwithstanding the verdict. Affirmed.

*Morton Barrows*, for appellants.

*Schoonmaker & Fleming*, for respondent.

COLLINS, J. Action to recover for injuries said to have been caused by defendants' negligence. At the trial the court dismissed the action as to defendants Roemer and Karst & Breher, and then the plaintiff had a verdict as against defendants (appellants) Lauer Bros. As the case is presented, the only question which needs elaboration is that raised by counsel's contention that the verdict is not supported by the evidence.

Defendant Roemer had contracted to erect a church in the city of St. Paul, and plaintiff was in his employ, as a carpenter. Roemer had sublet the necessary tin work to Karst & Breher, and the stone work to Lauer Bros., reserving to himself all of the carpenter work. When the accident occurred, Lauer Bros. were completing the stone tower or steeple, and, for the purpose of raising the materials, had attached a rope to a small platform, and then run it upwards, about 30 feet, to a block hung at the top of the tower. Passing through this block, the rope when taut descended at an acute angle, and approximately parallel with the plane of the south front of the building, to a stationary block upon the ground, a short distance

[1] Reported in 69 N. W. 893.

from the foot of the tower, and about 40 feet from the upper block. The rope ran through this stationary block, and to its end a horse was hitched, driven by one of Lauer Bros.' employés. When materials were to be hoisted the horse was driven away from the building, and the platform raised. The horse was backed up when the platform was to be lowered. Naturally, the rope was quite loose when the platform was upon the ground.

On the morning of the accident, defendants Karst & Breher put up a scaffold on the side of the building, the walk of which scaffold was a single plank, laid down on brackets. The east end of this plank projected east, beyond the south front of the building, so that, when that part of the rope running at an angle between the block at the top of the tower and the block on the ground was taut, it was about four feet above the plank, and from two to four feet west of the end which projected. When the platform was not in use, and resting upon the ground, the rope running between the blocks dropped loosely upon the plank, or might get underneath it, as it did just before plaintiff received his injuries. Karst & Breher's men were tinning a roof gutter during the forenoon, standing upon the plank, and the driver of the horse was engaged in conversation with them a number of times.

Immediately after dinner, plaintiff was directed by Roemer's foreman to fit a "slant board" into the same gutter, and went upon the scaffold, with another employé, to do the work. Shortly afterwards the driver hitched the horse to the end of the rope, and then stood immediately under the scaffold until plaintiff notified him to look out, as work was to be done there and something might fall upon him from above. This advised the driver of the presence of plaintiff on the scaffold. It was not shown just where the rope then was, but, from what resulted, it must have been in plain sight of the driver, and lying upon the ground, under the plank, which was also in plain sight. A few minutes afterwards the driver started the horse, and, as the rope was pulled away from the stationary block, it caught the underside of the plank, tipping it over and throwing both men to the ground.

Upon this state of the evidence, defendants Lauer Bros. having declined to put in any testimony, the court charged the jury that ordinary care was required of the driver of the horse, and if he

failed to observe ordinary care when operating the hoisting appa-
ratus, taking into consideration the apparent danger to the men
he knew were standing upon the plank, he was guilty of negligence
for which his employers were responsible, and that if there was no
apparent danger, under the circumstances, and ordinary care was
exercised by the driver, he was not negligent, and plaintiff could not
recover. And in this immediate connection the court further char-
ged that if the jury should find that the driver knew, or, in the exer-
cise of ordinary care, ought to have known, that it was dangerous
to operate the apparatus without seeing that the rope was above
the plank, knowing as he did that men were standing upon it and
in danger of being thrown off, it became his duty to see the position
of the rope, and a failure so to do constituted negligence, and plain-
tiff, without fault on his part, would be entitled to recover of these
appellants.

The charge was correct. The plaintiff and the driver of the horse
were working for independent contractors, were not fellow servants,
and there was sufficient evidence to support the verdict. The ques-
tion of plaintiff's contributory negligence was also for the jury, upon
the facts as above stated.

At the close of the testimony, counsel for appellants moved the
court to direct a verdict in favor of his clients, and this the court
declined to do. He thus brought the case within the provisions of
Laws 1895, c. 320. Subsequently, upon a settled case, counsel
moved for judgment notwithstanding the verdict, and the present
appeal is from an order denying this motion. Respondent's coun-
sel have not questioned the appealability of such an order, and we
have disposed of the case on its merits. But we do not wish to
be understood as holding that such an order is appealable, for it is
a debatable question.

Order affirmed.